UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIPRA JAIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNILODGERS, INC., et al.,<br><br>　　　　Defendants. | Case No. 21-cv-09747-TSH<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 26 |

## I.   INTRODUCTION

Pending before the Court is a Motion to Dismiss First Amended Complaint, filed by Defendants Unilodgers, Inc. and Vaibhav Verma (collectively "Defendants"). ECF No. 26. On April 26, 2022, Plaintiff Shipra Jain filed an Opposition. ECF No. 29. On May 3, 2022, Defendants filed a Reply. ECF No. 30. The Court finds this matter suitable for disposition without oral argument and **VACATES** the June 9, 2022 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss with leave to amend.[1]

## II.   BACKGROUND

In September 2018, Defendant Unilodgers, Inc. was incorporated under the laws of Delaware with a principal place of business in Mill Valley, California. FAC ¶ 19, ECF No. 22. Plaintiff was appointed Chief Operating Officer and Chief Financial Officer of Unilodgers, and Defendant Verma was appointed Chief Executive Officer and Secretary. *Id*. ¶ 20.

In 2019, Unilodgers entered into a Stock Agreement and a Vesting Agreement with

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 10, 21.

Plaintiff. *Id.* ¶ 23. Under the Stock Agreement, Plaintiff and Defendant Verma each had 2,253,472 shares of Unilodgers's common stock. *Id.* ¶ 24. The remaining stocks were allocated to investors, a stock option pool, and the company's Chief Technology Officer Prashanth Susarla. *Id.* The Vesting Agreement confirmed stock allocation and contained a Repurchase Option. *Id.* ¶ 25; ECF No. 22-1, Exh. A (Vesting Agreement). The Repurchase Option governs the ability of Unilodgers to repurchase Plaintiff's stock in the event of Plaintiff's termination from Unilodgers. Vesting Agreement, ¶ 2.1. According to the Repurchase Option, "if [Plaintiff's] status as an employee, director, consultant or any other positions providing service to the Company . . . is terminated for any reason . . . [Unilodgers] shall have the right and option for ninety (90) days from such date to purchase . . . all of the Stockholder's Unvested Shares as of the date of such termination." *Id*. Moreover, in the event of repurchase, Unilodgers "may designate and assign one or more employees, officers, directors or stockholders of the Company or other persons or organizations to exercise all or a part of the Company's Repurchase Option under this Agreement and purchase all or a part of such Unvested Shares." *Id.* ¶ 2.3.

After signing the Stock Agreement and Vesting Agreement, Plaintiff alleges "Defendants and others" began to push her out of Unilodgers by, among others, excluding Plaintiff from meetings, obstructing information, and suggesting Plaintiff resign. FAC ¶ 28. In July 2021, Plaintiff was informed that she had been removed from the Board of Directors. *Id.* ¶ 31. On August 17, 2021, Plaintiff received an email informing her that Unilodgers had repurchased Susarla's shares, giving Verma and another investor majority control and allowing them to remove Plaintiff from the Board by written consent. *Id.* ¶ 31. The email stated "Unilodgers repurchased 100% of [Plaintiff's] shares effective February 2020 pursuant to the notice originally provided to her. Therefore, [Plaintiff] is not a stockholder of Unilodgers." *Id.* ¶ 32.

On December 17, 2021, Plaintiff filed the instant action against Defendants Unilodgers and Verma. ECF No. 1. On March 29, 2022, Plaintiff filed a First Amended Complaint, alleging the following causes of action: 1) Breach of Contract (against Unilodgers), 2) Tortious Interference with Contractual Relations (against Verma), 3) Breach of Fiduciary Duty (Against all Defendants), 4) Conversion (Against all Defendants), and 5) Declaratory Relief (Against Unilodgers). FAC.

2

1  On April 12, 2022, Defendants filed a Motion to Dismiss the First Amended Complaint, alleging Plaintiff failed to sufficiently plead her second, third, fourth, and fifth causes of action under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 26.  On April 26, 2019, Plaintiff filed an Opposition.  ECF No. 29.  On May 3, 2022, Defendants filed a Reply.  ECF No. 30.

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the Court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Therefore, the Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and quotations omitted).

3

## IV. DISCUSSION

Defendants argue the FAC fails to adequately allege its: A) Second Cause of Action for Tortious Interference Against Defendant Verma, B) Third Cause of Action for Breach of Fiduciary Duty Against Defendant Verma, C) Third Cause of Action for Breach of Fiduciary Duty Against Unilodgers, D) Fourth Cause of Action for Conversion, and E) Fifth Cause of Action for Declaratory Relief.[2]

### A. Tortious Interference Against Defendant Verma

Defendants argue the FAC fails to sufficiently plead Defendant Verma was "motivated by some malicious or other bad faith purpose" and acted "without justification. ECF No. 26 at 7. Plaintiff argues the FAC sufficiently pleads Defendant Verma's conduct was "self-interested and exceeds the scope of his agency authority as a corporate director or officer." ECF No. 29 at 7-8.

Generally, "[u]nder Delaware law, the elements of a claim for tortious interference with a contract are: (1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Inv. Inc.*, 67 A.3d 444, 453 (Del. 2013). "[A] party to a contract cannot be held liable for breaching the contract and for tortiously interfering with that contract." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 884 (Del. Ch. 2009). The affiliate exception "requires that the defendant be a stranger to both the contract and the business relationship giving rise to and underpinning the contract." *Am Gen. Holdings LLC v. Renco Group, Inc.*, C.A. No. 7639-VCN, 2013 WL 5863010, at *12 (Del. Ch. 2013). "[B]ecause the affiliate exception is based upon the shared economic interests of affiliated entities, a plaintiff may allege facts to demonstrate that an interference by an affiliated entity was 'motivated by some malicious or other bad faith purpose.'" *Id*. "Such an allegation must meet a 'stringent bad faith standard' and state that the 'interfering party was not pursuing in good faith the legitimate profit seeking activities of the affiliated enterprises.'" *Id*.

The Court finds the FAC fails to "demonstrate that an interference by an affiliated entity

---

[2] The parties agree that Delaware law applies to this motion. ECF Nos. 26 at 5-6; 29 at 6.

1  was motivated by some malicious or other bad faith purpose." *Skye Mineral Investors, LLC v.
2  DXS Capital (U.S.) Limited*, C.A. No. 2018-0059-JRS, 2020 WL 881544, at *33 (Del. Ch. 2020).
3  Here, the FAC alleges "Verma personally authorized Unilodgers to take away Plaintiff's shares . .
4  . and personally signed corporate documents to facilitate this violation . . . [giving] Verma a larger
5  ownership interest and more control in Unilodgers." FAC at ¶ 46. These allegations are
6  conclusory. There are no pleaded facts demonstrating how Verma personally authorized the
7  repurchase of Plaintiff's shares or an authorization or signing of a corporate document motivated
8  by a malicious or bad faith purpose. *See Huff Energy Fund, L.P. v. Gershen*, C.A. No. 11116-
9  VCS, 2016 WL 5462958, at * 7 (Del. Ch. 2016) (dismissing tortious interference claim because
10 plaintiff's allegation of defendant's "animosity" towards plaintiff "identifie[d] no facts that would
11 allow a reasonable inference that any Director Defendant intentionally caused Longview to breach
12 the Shareholders Agreement or that any conduct by any Director Defendant was without
13 justification."); *compare with NACCO Industries, Inc. v. Applica Inc.*, 997 A.2d 1, 34 (Del. Ch.
14 2009) (tortious interference sufficiently plead because plaintiff provided "detailed allegations of
15 fraudulent statements" and defendant acquired "a nearly 40% stock position, facilitated at least in
16 part through false disclosures"). Accordingly, the Court **GRANTS** Defendants' Motion to
17 Dismiss the FAC's second cause of action for tortious interference against Defendant Verma.

**B.     Breach of Fiduciary Duty Against Defendant Verma**

Defendants argue Plaintiff's breach of fiduciary claim against Verma arises from the same facts as Plaintiff's breach of contract claim. ECF No. 26 at 8-9. Plaintiff argues her breach of fiduciary claim is independent of her breach of contract claim. ECF No. 29 at 9.

"Conduct by an entity that occupies a fiduciary position . . . may form the basis of both a contract and a breach of fiduciary duty claim." *RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'ship, HPA, Inc.*, No. 16873, 1999 WL 550350, at 10 (Del. Ch. July 16, 1999). "[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim" and "any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). However, "fiduciary duty claims can survive, despite sharing 'a common

nucleus of operative facts' with the underlying contractual claims, if the fiduciary duty claims 'depend on additional facts as well, are broader in scope, and involve different considerations in terms of a potential remedy . . . a plaintiff must properly plead 'distinct harms caused by the defendants that fell outside the scope of their contractual relationship.'" *Renco*, 2013 WL 5863010 at *10 (internal quotations omitted).

The Court finds the FAC fails to sufficiently plead breach of fiduciary duty against Verma. The FAC alleges Verma "breached his fiduciary duty to Plaintiff by personally authorizing Unilodgers to take away Plaintiff's shares in violation of the Vesting Agreement and/or personally signed corporate documents to facilitate this violation." FAC at ¶ 51. However, given that the Vesting Agreement, which also forms the basis of Plaintiff's Breach of Contract claim,[3] specifically addresses Unilodgers' ability and authority to repurchase Plaintiff's shares, the FAC's breach of contract and breach of fiduciary duty claims involve the same set of facts and are duplicative. *See Stewart v. BF Bolthouse Holdco, LLC*, C.A. No. 8119–VCP, 2013 WL 5210220, at *13 (Del. Ch. 2013) (dismissing fiduciary claim as duplicative because the claim "arises from a dispute relating to the exercise of a contractual right—Bolthouse's right to exercise its Repurchase

---

[3] Plaintiff's cause of action for breach of contract alleges:

> Unilodgers breached the Vesting Agreement by claiming that it has repurchased all of Plaintiff's shares in Unilodgers in February 2020 despite the fact that: (i) it did not terminate Plaintiff's status as a Service Provider to Unilodgers in 2020; and (ii) even if it did, Unilodgers did not provide Plaintiff with the required notice of intention to exercise the Repurchase Option and payment for the repurchased shares within 90 days of such termination, and therefore Unilodgers' Repurchase Option has been extinguished.
>
> Even if the Repurchase Option was not extinguished in 2020, Unilodgers' purported termination of Plaintiff's position as a Board member on August 17, 2021 cannot be the basis for any valid exercise of the Repurchase Option because, inter alia: (i) the termination was a sham; and (ii) even if the termination was valid, Unilodgers did not provide Plaintiff with the required notice of intention to exercise the Repurchase Option and payment for the repurchased shares within 90 days of such termination (by October 29, 2021), and therefore Unilodgers' Repurchase Option has now been extinguished.

FAC ¶¶ 38-39.

1  Option under the Purchase Agreement after Plaintiffs terminated their employment with Bolthouse
2  Farms."); *Solow v. Aspect Resources, LLC*, No. Civ.A. 20397, 2004 WL 2694916, at *5 (Del. Ch.
3  2004) ("Because a specific contractual provision allegedly addresses this conduct, the conduct
4  should be analyzed under contract law."). Accordingly, the Court **GRANTS** Defendants' Motion
5  to Dismiss the FAC's third cause of action for breach of fiduciary duty against Verma.

### C. Breach of Fiduciary Duty Against Unilodgers

Defendants argue the FAC fails to sufficiently plead a breach of fiduciary duty against Unilodgers under an aiding and abetting theory because the FAC lacks specific factual allegations establishing a breach. ECF 26 at 10.

"The elements of a claim for aiding and abetting a breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, who is not a fiduciary, knowingly participated in [the] breach, and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary." *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 172 (Del. 2002) (internal citation and quotations omitted).

The Court finds the FAC fails to sufficiently plead breach of fiduciary against Unilodgers. As discussed above, the Court finds the FAC fails to sufficiently plead a breach of fiduciary duty against Defendant Verma. "Without a well-pleaded allegation in the complaint for a breach of fiduciary duty, there can be no claim for aiding and abetting such a breach." *Malone v. Brincat*, 722 A.2d 5, 15 (Del. 1998); *see also Blue Chip Capital Fund II Ltd. Partnership v. Tubergen*, 906 A.2d 827, 833 (Del. Ch. 2006) ("Here, the complaint asserts contractual and fiduciary claims that arise from the same alleged facts and underlying conduct . . . if the dispute relates to rights and obligations expressly provided by contract, the fiduciary duty claims would be "superfluous.") Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss the FAC's third cause of action for breach of fiduciary duty against Unilodgers.

### D. Conversion

Defendants argue the FAC fails to show how Plaintiff's right to Unilodgers shares is independent of the Stock Agreement and Vesting Agreement. ECF No. 26 at 10-11.

Conversion is an "act of dominion wrongfully exerted over the property of another, in

denial of his right, or inconsistent with it." *Drug, Inc. v. Hunt*, 187 A. 87, 93 (Del. 1933). "Under Delaware law, 'where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.'" *AQSR India Private, Ltd v. Bureau Veritas Holdings, Inc.*, C.A. No. 4021-VCS, 2009 WL 1707910, at *12 (D. Del. 2001) (internal citations omitted). "Thus, in order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract." *Kuroda*, 971 A.2d at 889.

The Court finds the FAC fails to sufficiently plead a cause of action for conversion. Plaintiff's conversion claim is based on Verma personally authorizing the taking of Plaintiff's Unilodgers shares and Unilodgers retaining counsel to "come up with frivolous arguments" and "cover its tracks." FAC ¶ 57. According to the FAC, these acts violated "a fiduciary duty owed to Plaintiff" and "the common law duty to not misappropriate the property of another." FAC ¶ 58. However, as previously discussed, Defendants' ability and authority to repurchase Plaintiff's shares are covered by the Vesting Agreement, which is the basis of Plaintiff's breach of contract claims. The FAC fails to allege how Defendants violated a duty in tort rather than a duty established by contract. *Compare Malca v. Rappi, Inc.,* No. CV 2020-0152-MTZ, 2021 WL 2044268, at *2, 5 (Del. Ch. May 20, 2021) (allowing conversion claim to proceed where Investment Agreement requiring money transfer for shares may not cover company's consolidation with another company) *with Khushaim v. Tullow Inc.*, C.A. No. N15C–11–212–PRW, 2016 WL 3594752, at *8 (Del. Super .Ct. 2016) (dismissing conversion claim because "Khushaim's right to repossess the software from Tullow derives wholly and only from the PDC" and "[s]imply citing Tullow's contract-based duty to return property does not satisfy the duty requirement for the tort of conversion."). "Merely alleging that defendants violated their duty against conversion of property is circular, and the Court is not required to accept such a conclusory allegation as true." *Kuroda*, 971 A.2d at 890. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's fourth cause of action for conversion.

### E. Declaratory Relief

Defendants argue the FAC's request for declaratory relief seeks is identical to the relief sought by Plaintiff's breach of contract claims. ECF No. 26 at 11-13. Plaintiff argues declaratory relief would serve useful purposes of preventing future litigation and determining the parties' obligations. ECF No. 29 at 14-15.

In considering whether to hear a claim for declaratory relief, courts consider (1) whether the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" and (2) if "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *McGraw–Edison Co. v. Preformed Line Products Co.,* 362 F.2d 339, 342 (9th Cir. 1966); *see also CIBC Bank USA v. JH Portfolio Debt Equities, LLC*, C.A. No. N18C-07-130 EMD CCLD, 2021 WL 2230976, at *15 (Del. Super. Ct. 2021) ("The mere availability of another adequate remedy does not in and of itself weigh against the giving of declaratory relief. The real test is whether the declaratory judgment action would serve a useful purpose.") (internal quotations and citations omitted).

The Court finds the FAC sufficiently pleads a cause of action for declaratory relief. Plaintiff's breach of contract claim alleges that Defendants did not validly exercise the Repurchase Option or the Repurchase Option extinguished. *See* FAC ¶ 38-39. The Vesting Agreement has a section, separate from the Repurchase Option, that governs released shares. *See* Vesting Agreement § 3 (Release of Shares from Repurchase Option); *Id*. § 3.1 (Expiration); § 3.2 (Delivery of Released Shares). There is a possibility that the Court could resolve Plaintiff's breach of contract claim without reaching the issue of the ownership of the shares. "Courts decline to dismiss declaratory judgment claims 'where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief.'" *Jeong v. Neto Financial LLC*, Case No. 21-cv-2393-BLF, 2022 WL 174236, at *21 (N.D. Cal. Jan. 19, 2022) (citing *Teague v. Biotelemetry, Inc*., Case No. 16-cv-06527-TSH, 2018 WL 5310793, at *13 (N.D. Cal. Oct. 25, 2018)). Therefore, the FAC's request "to determine Plaintiff's rights and the obligations Unilodgers owes to Plaintiff under the Vesting Agreement" and for declaratory judgement that (1) "Unilodgers has not validly exercised the Repurchase Option in the Vesting

9

Agreement to repurchase all of Plaintiff's shares in Unilodgers" and (2) "the Repurchase Option has been extinguished due to Unilodgers' failure to comply with the requirements of Section 2 of the Vesting Agreement" sufficiently pleads a cause of action for declaratory judgment. FAC ¶¶ 67, ¶ 68; *cf. Alta Devices, Inc. v. LG Electronics, Inc*., 343 F.Supp.3d 868, 890 (N.D. Cal. 2018) (denying motion to dismiss declaratory judgment claim because "[a]lthough Alta's DTSA, CUTSA, and UCL claims seek retrospective relief (damages) for the past harm that Alta suffered, the declaratory relief claim seeks a declaration of the parties' prospective rights and duties under the NDA, as well as injunction going forward.")

The Court **DENIES** Defendants' Motion to Dismiss the FAC's fifth cause of action for declaratory relief.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss with leave to amend. Plaintiff shall file a second amended complaint by June 22, 2022.

**IT IS SO ORDERED.**

Dated: June 8, 2022

THOMAS S. HIXSON
United States Magistrate Judge

10