UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIPRA JAIN,<br><br>        Plaintiff,<br><br>    v.<br><br>UNILODGERS, INC., et al.,<br><br>        Defendants. | Case No. 21-cv-09747-TSH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 47 |

## I.    INTRODUCTION

Pending before the Court is the Motion to Dismiss on behalf of Unilodgers, Inc. and Vaibhav Verma ("Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 47. Plaintiff Jain filed an Opposition (ECF No. 48) and Defendants filed a Reply (ECF No. 49). The Court finds this matter suitable for disposition without oral argument and **VACATES** the April 27, 2023 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the motion.[1]

## II.    BACKGROUND

In September 2018, Defendant Unilodgers, Inc. ("Unilodgers") was incorporated under the laws of Delaware with a principal place of business in Mill Valley, California. SAC ¶ 19, ECF No. 45. Plaintiff was appointed Chief Operating Officer and Chief Financial Officer of Unilodgers, and Defendant Verma was appointed Chief Executive Officer and Secretary. *Id*. ¶ 20. Plaintiff and Verma were appointed as members of Unilodgers' Board of Directors. *Id.* ¶ 20.

In 2019, Unilodgers entered into a Stock Agreement and a Vesting Agreement with

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 10, 21.

Plaintiff. *Id.* ¶ 23. Under the Stock Agreement, Plaintiff and Verma each had 2,253,472 shares of Unilodgers's common stock. *Id.* ¶ 24. The remaining stocks were allocated to investors, a stock option pool, and the company's Chief Technology Officer Prashanth Susarla. *Id.* The Vesting Agreement confirmed stock allocation and contained a Repurchase Option. *Id.* ¶ 25; ECF No. 45-1, Ex. A ("Vesting Agreement"). The Repurchase Option governs the ability of Unilodgers to repurchase Plaintiff's stock in the event of Plaintiff's termination from Unilodgers. Vesting Agreement, ¶ 2.1. According to the Repurchase Option, "if [Plaintiff's] status as an employee, director, consultant or any other positions providing service to the Company . . . is terminated for any reason . . . [Unilodgers] shall have the right and option for ninety (90) days from such date to purchase . . . all of the Stockholder's Unvested Shares as of the date of such termination." *Id.* Moreover, in the event of repurchase, Unilodgers "may designate and assign one or more employees, officers, directors or stockholders of the Company or other persons or organizations to exercise all or a part of the Company's Repurchase Option under this Agreement and purchase all or a part of such Unvested Shares." *Id.* ¶ 2.3.

After signing the Stock Agreement and Vesting Agreement, Plaintiff alleges "Defendants and others" began to push her out of Unilodgers by, among others, excluding Plaintiff from meetings, obstructing information, and suggesting Plaintiff resign. SAC ¶ 28. In July 2021, Plaintiff was informed that she had been removed from the Board of Directors. *Id.* ¶ 31. On August 17, 2021, Plaintiff received an email informing her that Unilodgers had repurchased Susarla's shares, giving Verma and another investor majority control and allowing them to remove Plaintiff from the Board by written consent. *Id.* ¶ 31. The email stated "Unilodgers repurchased 100% of [Plaintiff's] shares effective February 2020 pursuant to the notice originally provided to her. Therefore, [Plaintiff] is not a stockholder of Unilodgers." *Id.* ¶ 32.

On December 17, 2021, Plaintiff filed the instant action against Defendants Unilodgers and Verma. ECF No. 1. On March 29, 2022, Plaintiff filed a First Amended Complaint, alleging the following causes of action: 1) Breach of Contract (against Unilodgers), 2) Tortious Interference with Contractual Relations (against Verma), 3) Breach of Fiduciary Duty (Against all Defendants), 4) Conversion (Against all Defendants), and 5) Declaratory Relief (Against Unilodgers). ECF No.

22.

On June 8, 2022, this Court entered an Order granting dismissal of Plaintiff's second, third, and fourth causes of action. ECF No. 33. On February 16, 2023, Plaintiff filed a Second Amended Complaint ('SAC"), alleging the following causes of action: 1) Breach of Contract (against Unilodgers), 2) Tortious Interference with Contractual Relations (against Verma), 3) Breach of Fiduciary Duty (Against all Defendants), 4) Conversion (Against all Defendants), 5) Civil Conspiracy (Against all Defendants), and 6) Declaratory Relief (Against Unilodgers). ECF No. 45.

On March 2, 2023, Defendants filed a Motion to Dismiss the Second Amended Complaint, alleging Plaintiff failed to sufficiently plead her second, third, fourth, and fifth causes of action under Federal Rule of Civil Procedure 12(b)(6). ECF No. 47. On March 16, 2023, Plaintiff filed an Opposition. ECF No. 48. On March 23, 2023, Defendants filed a Reply. ECF No. 49.

### III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as

1  true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere

2  conclusory statements." *Iqbal*, 556 U.S. at 678.

3        If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

4  request to amend the pleading was made, unless it determines that the pleading could not possibly

5  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

6  banc) (citations and quotations omitted).  However, a court "may exercise its discretion to deny

7  leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated

8  failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

9  party . . ., [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876,

10 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182

11 (1962)).

## IV.  DISCUSSION

Defendants argue the SAC fails to adequately allege its: A) Second Cause of Action for Tortious Interference Against Verma; B) Third Cause of Action for Breach of Fiduciary Duty against Verma; C) Third Cause of Action for Breach of Fiduciary Duty Against Unilodgers;[2] D) Fourth Cause of Action for Conversion Against All Defendants; and E) Fifth Cause of Action for Civil Conspiracy Against All Defendants.  The Parties both apply Delaware law as to all causes of action, as they did in the prior motion to dismiss, and the Court continues to do so as well.

**A.  Tortious Interference with Contractual Relations Against Verma**

Defendants argue that Plaintiff's tortious interference claim fails because the allegations are conclusory and improperly stated "upon information and belief" and thus fail to overcome the stringent "affiliate exception." ECF No. 47 at 7, 12-13.  Additionally, they argue that the acts constituting "interference" are indirect, confusing, and tangential. *Id.* at 14.  Plaintiff responds that the SAC plausibly alleges that Verma acted with a bad faith purpose, and that the acts alleged upon information and belief are properly pled because they are peculiarly within Defendants' possession and control.  ECF No. 48 at 10-13.

---

[2] Plaintiff thereafter voluntarily dismissed her breach of fiduciary claim against Unilodgers without prejudice.  ECF No. 48 at 6.

4

As stated in the Court's prior Order, generally, "[u]nder Delaware law, the elements of a claim for tortious interference with a contract are: (1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Invs. Inc*., 67 A.3d 444, 453 (Del. 2013). "[A] party to a contract cannot be held liable for breaching the contract and for tortiously interfering with that contract." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 884 (Del. Ch. 2009). The affiliate exception "requires that the defendant be a stranger to both the contract and the business relationship giving rise to and underpinning the contract." *Am Gen. Holdings LLC v. Renco Group, Inc.*, C.A. No. 7639-VCN, 2013 WL 5863010, at *12 (Del. Ch. Oct. 31, 2013). "[B]ecause the affiliate exception is based upon the shared economic interests of affiliated entities, a plaintiff may allege facts to demonstrate that an interference by an affiliated entity was 'motivated by some malicious or other bad faith purpose.'" *Id*. "Such an allegation must meet a 'stringent bad faith standard' and state that the 'interfering party was not pursuing in good faith the legitimate profit seeking activities of the affiliated enterprises.'" *Id*.

Delaware courts have been hesitant to find officers liable for tortious interference with their own corporation's contracts. "[E]mployees acting within the scope of their employment are identified with the defendant himself so that they may ordinarily advise the defendant to breach his own contract without themselves incurring liability in tort. This rationale is particularly compelling when applied to corporate officers as 'their freedom of action directed toward corporate purposes should not be curtailed by fear of personal liability.'" *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1182–83 (Del. Ch. 1999) (quotations and citations omitted). *See also Am. Bottling Co. v. Repole*, No. CVN19C03048AMLCCLD, 2020 WL 7787043, at *7 (Del. Super. Ct. Dec. 30, 2020) ("Tortious interference claims rarely are pleaded adequately against corporate officials, but those cases that have survived a motion to dismiss contained substantive factual allegations regarding the corporate official's personal motivations.").

In light of Delaware courts' reticence to expand liability to corporate officers for tortious interference with their corporations' contracts, the Court determines that Plaintiff's allegations do

1    not sufficiently allege bad faith to move forward with the tortious interference claim.  Plaintiff
2    alleges that Verma stood to gain personally because "the repurchase of Plaintiff's shares in the
3    company would give him a majority ownership interest and greater control in Unilodgers."  ECF
4    No. 45 ¶ 46.  However, that Verma stood to gain does not necessarily mean that he was acting in
5    bad faith such that he was outside the scope of his employment.  *See Goldman v. Pogo.com, Inc.*,
6    No. CIV.A. 18532-NC, 2002 WL 1358760, at *9 (Del. Ch. June 14, 2002) ("Merely because
7    directors are alleged to have acted in part with adverse motives does not necessarily lead to the
8    conclusion that they acted outside the scope of their authority for the purposes of holding directors
9    personally liable in tort for interfering with the contractual rights of a shareholder."); *Am. Bottling
10   Co.*, 2020 WL 7787043, at *6–7 (finding allegations that defendant focused in negotiations on
11   getting company management, including himself, an up-front cash payment "insufficient to
12   overcome the fundamental presumption that [defendant] was acting to benefit [corporation] and its
13   stockholders.").
14           Plaintiff also points to "a defamatory smear campaign," including "baseless allegations of
15   misconduct to Unilodgers' investors, Board of Directors, and employees . . . ."  ECF No. 45 ¶ 46.
16   Much of these allegations are conclusory, such as that Verma engaged in a "defamatory smear
17   campaign."  *Id.*  While some of the new allegations provide some factual basis to support that
18   Verma acted in bad faith, they do not provide enough non-conclusory facts to push these
19   allegations from possible to plausible.  *Compare Kuroda*, 971 A.2d at 885 (deeming the
20   allegations that defendants acted to interfere in plaintiff's contract because of a "campaign of
21   personal retaliation in which they sought both to protect [their] personal reputations and interests
22   and to enrich themselves at [plaintiff's] expense" too conclusory to allege that defendants
23   exceeded the scope of their authority) (quotations and citations omitted) *with Nye v. University of
24   Delaware*, 02C-12-065JRJ, 2003 WL 22176412 (Del. Super. Ct. Sept.17, 2003) (finding sufficient
25   personal motive to consider defendants to have acted outside the scope of their employment where
26   the complaint provided detailed allegations as to defendants' lies and obstruction to oust plaintiff
27   from his position).  While the Court appreciates that Plaintiff is not required, and may not have the
28   information available, to provide allegations as detailed as those in *Nye*, in light of Delaware

courts' reticence to circumvent the affiliate exception, the Court determines the limited facts suggesting that Verma stood to gain financially and made false statements about Plaintiff to investors and the Board of Directors are insufficient to make out a claim that Verma acted outside the scope of his employment when he prepared corporate documents retroactively terminating Plaintiff.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to the tortious interference with contractual relations claim. Plaintiff indicated in her Opposition that she has additional facts which might support that Verma acted in bad faith, related to Verma's false accusations to investors about Plaintiff. ECF No. 48 at 11, n.4. As a result, the Court **GRANTS** Plaintiff a last opportunity to amend her tortious interference claim. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice.") (citing *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001)).

### B.      Breach of Fiduciary Duty Against Verma

Defendants argue that Plaintiff's claim for breach of fiduciary duty against Verma fails for multiple reasons. First, they argue it arises from a dispute related to the exercise of a contractual right. ECF No. 47 at 15. Second, they argue the SAC improperly utilizes "upon information and belief," and is conclusory. *Id.* The Court takes each argument in turn.[3]

#### 1.      Duplicative of Breach of Contract Claim

"Conduct by an entity that occupies a fiduciary position . . . may form the basis of both a contract and a breach of fiduciary duty claim." *RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'ship, HPA, Inc.*, No. 16873, 1999 WL 550350, at *10 (Del. Ch. July 16, 1999). "[W]here a

---

[3] Defendants also argue that that none of the alleged breaches of Verma's fiduciary duty "depend on additional facts . . . are broader in scope, and involve different considerations in terms of a potential remedy." ECF No. 47 at 15-16. Based on the case law invoked by Defendants, the Court understands this argument to be part of Defendants' argument that this cause of action is duplicative of the breach of contract cause of action. *See id.*; *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, No. CV 7668-VCN, 2015 WL 394011, at *7 (Del. Ch. Jan. 29, 2015) (assessing whether there is an "independent basis for fiduciary claims from the same general events."). The Court thus does not consider this argument separately.

dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim" and "any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). However, "fiduciary duty claims can survive, despite sharing 'a common nucleus of operative facts' with the underlying contractual claims, if the fiduciary duty claims 'depend on additional facts as well, are broader in scope, and involve different considerations in terms of a potential remedy . . . a plaintiff must properly plead 'distinct harms caused by the defendants that fell outside the scope of their contractual relationship.'" *Am Gen. Holdings LLC*, 2013 WL 5863010 at *10 (internal quotations omitted).

The Delaware Supreme Court recently indicated that "bootstrapping case law only requires dismissal where a fiduciary duty claim wholly overlaps with a concurrent breach of contract claim." *See Bäcker v. Palisades Growth Cap. II, L.P.*, 246 A.3d 81, 109 (Del. 2021). Pursuant to this guidance, this Court finds that Plaintiff's new allegations sufficiently differentiate this claim from her breach of contract claim. *See also In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 806–07 (Del. Ch. 2022) (quoting *Bäcker* and denying dismissal of plaintiff's claim based on failure of the board of directors to disclose material information to stockholders, in part, because the contract did not speak to that obligation). Here, interpreting Plaintiff's claim in the light most favorable to her, it is plausible that Plaintiff is alleging misconduct by Verma not wholly overlapping with the actions taken in relation to Unilodgers' repurchase of Plaintiff's shares. *See, e.g.*, ECF No. 45 ¶ 52 (Verma "fail[ed] to include plaintiff in C-Suite meetings and important management decisions[,] . . . falsely accus[ed] Plaintiff of providing materially false financial information to venture capital firms[,]. . . [and] instruct[ed] Unilodgers' employees to refrain from sharing material information with Plaintiff."). The Court finds that conduct Plaintiff has alleged is distinct from the breach of contract. *See Bäcker*, 246 A.3d at 109 (distinguishing between breach of the voting agreement and breach of defendant's fiduciary duty as director in deceiving plaintiff to create a quorum for a vote).

### 2. Sufficiency of Factual Allegations

Defendants additionally argue that the allegations are improperly alleged upon information

and belief, and conclusory. ECF No. 47 at 14-16.

"'The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). S*ee also Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant."). Plaintiff's allegations "upon information and belief" involve facts within Defendants' exclusive possession. *See, e.g.*, ECF No. 45 ¶ 52 ("Upon information and belief, Verma breached his fiduciary duty to Plaintiff by taking numerous steps to push Plaintiff out of Unilodgers . . . ."). The Court does not consider Plaintiff's pleadings improper on this basis.

Defendants also argue that Plaintiff's allegations are conclusory because allegations, such as that Verma made false statements to venture capital firms regarding Plaintiff's performance, do not provide sufficient specifics. ECF No. 47 at 15. The Court agrees that Plaintiff's allegations, such as that Verma failed to include Plaintiff in C-Suite meetings and important management decisions, are not a model of detail, but they do provide sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Rule 8(a)(2) does not require Plaintiff to plead the "who, what, when, where, and how." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (discussing Rule 9(b) heightened pleading). *See also Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278, 286 (1st Cir. 2014) ("A conclusory allegation, however, is one which simply asserts a legal conclusion, such as 'I was retaliated against,' not a specific factual allegation, such as 'my supervisor threw a book at me,' that merely lacks some surrounding context."). The allegations, such as that Verma instructed employees to refrain from sharing material information with Plaintiff, might lack surrounding context, but they provide sufficient details of Plaintiff's breach of fiduciary duty claim.

The Court does note some possible tension with this finding and its determination that the tortious interference allegation fails to provide sufficient facts to support an inference that Verma

acted outside the scope of his employment. Such a determination is in keeping with other Delaware courts which have distinguished between pleading sufficient facts to allege a defendant breached his fiduciary duty as opposed to that the defendant was acting outside the scope of his employment. *See Goldman*, 2002 WL 1358760, at *9 (noting that the complaint "raises questions as to whether the directors breached their fiduciary duty of loyalty" but "does not justify an inference that the directors acted outside the scope of their authority."); *Wallace ex rel.*, 752 A.2d at 1183 ("However, while plaintiffs allege with sufficient specificity that the Officers used this control for self-interested reasons adverse to the Partnership's interests (thereby allegedly breaching their fiduciary duty to the Limited Partners and the Limited Partnership), plaintiffs do not allege that the Officers exceeded the scope of their authority to direct the General Partner's business decision making when they committed these self-interested acts.").

Finally, the Court takes note of Defendants' argument that Verma cannot be held liable for breach of his fiduciary duty as a joint venturer and/or partner because his actions were necessarily performed solely in his corporate capacity and as part of his corporate relationship. ECF No. 49 at 7. Defendants cites no legal authority in support of these arguments, the Court is not aware of any authority, and at this juncture the issue has not been fully briefed. The Court thus declines to make such a determination. Defendants additionally argue that "[t]he parties are not engaged in a 'partnership,' and the term 'joint venture' in Delaware formally excludes corporations." *Id.* (citing Joint Venture, DEL. P.J.I. CIV. § 18.11 (2000) ("A joint venture is an enterprise jointly undertaken by two or more persons to carry out a single business transaction, without the designation of a partnership or corporation, for their mutual benefit.")). While the Court has doubts about the extent to which Plaintiff can establish the existence of a joint venture, the Court disagrees that the fact a corporation exists precludes the existence of a joint venture. *See, e.g.*, *Wah Chang Smelting & Ref. Co. of Am. v. Cleveland Tungsten Inc.*, No. CIV.A. 1324-K, 1996 WL 487941, at *4 (Del. Ch. Aug. 19, 1996) (finding a joint venture to pursue the tungsten business and structured a corporation as the entity through which they operated the joint venture); *Wagamon v. Dolan*, No. CIV.A. 5594-VCG, 2013 WL 1023884, at *2 (Del. Ch. Mar. 15, 2013) (discussing the dissolution of corporation started as joint venture and later incorporated).

1     Accordingly, the Court **DENIES** Defendant's Motion to Dismiss the SAC's cause of
2  action for breach of fiduciary duty against Verma.

3  **C.     Conversion Against All Defendants**

4     Defendants argue that Plaintiff's conversion claim fails against both Verma and Unilodgers
5  on the basis that the SAC's new allegations do not credibly support a claim that Defendants
6  breached an independent tort duty owed to Plaintiff.  ECF No. 47 at 17.  Plaintiff responds that she
7  has pled additional facts supporting that both Verma and Unilodgers manufactured her removal
8  from the Board of Directors to seize Plaintiff's shares and thus has pled an independent tort duty.
9  ECF No. 48 at 15-16.

10    Conversion is an "act of dominion wrongfully exerted over the property of another, in
11 denial of his right, or inconsistent with it."  *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933).
12 "Generally, the necessary elements for a conversion under Delaware law are that a plaintiff had a
13 property interest in the converted goods; that the plaintiff had a right to possession of the goods;
14 and that the plaintiff sustained damages."  *Stone & Paper Invs., LLC v. Blanch*, No. CV 2018-
15 0394-PAF, 2020 WL 3496694, at *10 (Del. Ch. June 29, 2020) (quoting *Goodrich v. E.F. Hutton
16 Grp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988)).  "Under Delaware law, 'where an action is
17 based entirely on a breach of the terms of a contract between the parties, and not on a violation of
18 an independent duty imposed by law, a plaintiff must sue in contract and not in tort.'" *AQSR India
19 Private, Ltd v. Bureau Veritas Holdings, Inc.*, No. CIV. A. 4021-VCS, 2009 WL 1707910, at *12
20 (D. Del. June 16, 2009) (internal citations omitted).  "Thus, in order to assert a tort claim along
21 with a contract claim, the plaintiff must generally allege that the defendant violated an
22 independent legal duty, apart from the duty imposed by contract." *Kuroda,* 971 A.2d at 889.

23    The Court finds that Plaintiff has alleged a conversion claim against Verma not entirely
24 based on the breach of contract claim.  Drawing all inferences in Plaintiff's favor, she alleges that
25 Verma wrongfully instigated her removal from the Board of Directors by spreading
26 misinformation and essentially sabotaging Plaintiff's role within Unilodgers.  ECF No. 45 ¶¶ 31,
27 52.  Construing Plaintiff's allegations, regardless of whether the Vesting Agreement permitted
28 repurchase of shares once Plaintiff was removed from the Board of Directors, Verma wrongfully

United States District Court
Northern District of California

1  exerted control over Plaintiff's shares because his conduct in securing her Board removal violated
2  his fiduciary duty to her, a duty independent of any owed under the Vesting Agreement. *Id.* ¶ 59.
3  Accordingly, the Court **DENIES** Plaintiff's conversion claim as to Verma.
4        As to Unilodgers, however, Plaintiff has not added any additional facts to the First
5  Amended Complaint, except generally alleging that Unilodgers "knowingly and substantially
6  assisted Verma in improperly removing Plaintiff from Unilodgers' Board of Directors." ECF No.
7  45 ¶ 58. Further, Plaintiff has not pointed to a separate legal duty owed to Plaintiff by Unilodgers.
8  *See Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 539 (Del. 1996) (declining to find that a
9  corporation owed a fiduciary duty to a stockholder). Without identifying an independent duty
10 owed to Plaintiff by Unilodgers, Plaintiff has not alleged a conversion claim against Unilodgers.
11 *See Diver v. Miller*, 148 A. 291, 293 (Del. Super. Ct. 1929) ("An act which does not amount to a
12 legal injury cannot be actionable because it is done with a bad intent.").
13       Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's conversion
14 claim against Unilodgers. Plaintiff has amended her Complaint on two prior occasions, her initial
15 complaint was filed over a year ago, and she does not identify any additional facts in her
16 Opposition to indicate that she will be able to differentiate her conversion claim if given another
17 opportunity. As such, the Court **DENIES** Plaintiff leave to amend as to her conversion claim
18 against Unilodgers. *See Carvalho*, 629 F.3d at 892–93.

19 **D.**    **Civil Conspiracy Against All Defendants**

20       Defendants argue that the civil conspiracy claim fails because Plaintiff does not allege an
21 independent underlying wrong such as a tort or statutory violation. ECF No. 47 at 17-18. Further,
22 Verma cannot conspire with Unilodgers as an officer of the corporation. *Id.* at 18. Finally,
23 Defendants argue that Plaintiff has not adequately pled the elements of conspiracy. *Id.* at 19.
24       "In Delaware, civil conspiracy is an independent wrong that occurs when there is: '(1) [a]
25 confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of
26 the conspiracy; and (3) [a]ctual damage.'" *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 805 (Del. Ch.
27 2009), *aff'd sub nom. Teachers' Ret. Sys. of Louisiana v. PricewaterhouseCoopers LLP*, 11 A.3d
28 228 (Del. 2011) (quoting *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149–50 (Del. 1987). "[A]

12

1  corporation generally cannot be deemed to have conspired with its wholly owned subsidiary, or its
2  officers and agents. This general rule does not apply, however, when the officer or agent of the
3  corporation steps out of her corporate role and acts pursuant to personal motives." *In re*
4  *Transamerica Airlines, Inc.*, No. CIV.A. 1039-N, 2006 WL 587846, at *6 (Del. Ch. Feb. 28,
5  2006).

6  As the Court has determined that Plaintiff has not sufficiently pled facts making plausible
7  that Verma's conduct in pushing Plaintiff out of her role was outside the scope of his employment
8  for tortious interference, the Court finds Plaintiff has not alleged Verma stepped out of his
9  corporate role for purposes of civil conspiracy. *See Amaysing Techs. Corp. v. Cyberair*
10 *Commc'ns, Inc.*, No. CIV.A. 19890-NC, 2005 WL 578972, at *8 (Del. Ch. Mar. 3, 2005) (noting
11 that courts have considered corporate agent's acts pursuant to personal motive to mean a "personal
12 animus and/or desire for financial benefit other than one's corporate salary" and noting plaintiff
13 failed to allege a benefit "independent of their financial interest resulting from their employment
14 by or investment in [the company]."). As detailed above with regard to tortious interference, the
15 Court does not believe that Plaintiff has alleged facts supporting that Verma acted outside the
16 scope of his employment to treat Verma as a separate entity for tortious interference. On a similar
17 basis, the Court finds that Plaintiff has not allege Verma stepped outside his corporate role to
18 consider him a separate entity for civil conspiracy.

19 Accordingly, this Courts **GRANTS** Defendants' Motion to Dismiss Plaintiff's cause of
20 action based on civil conspiracy. Just as with Plaintiff's tortious interference claim, the Court
21 **GRANTS** Plaintiff a last opportunity to amend.

## V. CONCLUSION

23 For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART**
24 Defendants' Motion to Dismiss. The Court **GRANTS** dismissal of the causes of action based on
25 tortious interference with contractual relations against Verma, conversion against Unilodgers, and
26 civil conspiracy against both Defendants. The Court **DENIES** dismissal of Plaintiff's breach of
27 fiduciary duty and conversion claims against Verma. The Court **GRANTS** Plaintiff leave to
28 amend her tortious interference claim and civil conspiracy claim and **DENIES** leave to amend her

conversion claim against Unilodgers. Plaintiff may file a Third Amended Complaint on or before May 12, 2023.

**IT IS SO ORDERED.**

Dated: April 13, 2023

THOMAS S. HIXSON
United States Magistrate Judge