UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIPRA JAIN,<br><br>    Plaintiff,<br><br>v.<br><br>UNILODGERS, INC., et al.,<br><br>    Defendants. | Case No. 21-cv-09747-TSH<br><br>**TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 74 |

## I.   INTRODUCTION

On January 17, 2024, Plaintiff Shipra Jain filed an emergency motion for a temporary restraining order to enjoin Defendants Vaibhav Verma and Unilodgers, Inc. from proceeding with an impending sale of all of Unilodgers' assets to an India-based portfolio company of one of Unilodgers' investors. Application for a Temporary Restraining Order, ECF No. 74 at 1; ECF No. 81 at 7, 28.[1] Jain also requested that the court issue an order to show cause why a preliminary injunction should not issue. ECF No. 74 at 2, 17. Defendants filed an Opposition (ECF No. 80) and Jain filed a Reply (ECF No. 81). The Court held a hearing on January 25, 2024. On January 31, 2024, the Court issued an order calling for supplemental briefing on the propriety of Jain's proposed TRO and preliminary injunction. ECF No. 86. The parties filed responses at ECF Nos. 87, 88 and 89. For the reasons set forth below, the Court **GRANTS** a temporary restraining order, enjoining Defendants or their agents from selling Unilodgers' assets or otherwise liquidating the

---

[1] For precision's sake, citations herein are to the unredacted versions of Plaintiff's declaration in support of this motion (ECF No. 73-2, Decl. of Shipra Jain) and of Plaintiff's reply to Defendants' opposition (ECF No. 81), which were filed under seal. Most sections of these documents cited within this order can be found in the redacted versions that Plaintiff filed on the public docket. *See* ECF No. 74-20 (Redacted Jain Decl.); No. 82 (Plaintiff's Reply and Second Administrative Motion to File Under Seal).

company. *See* Fed. R. Civ. P. 65(b). The temporary restraining order shall expire at 5:00 p.m. on February 21, 2024.[2]

## II. BACKGROUND

In September 2018, Defendant Unilodgers, Inc. ("Unilodgers") was incorporated under the laws of Delaware with a principal place of business in Mill Valley, California. Plaintiff's Second Amended Complaint ("SAC") ¶ 19, ECF No. 45. Plaintiff was appointed Chief Operating Officer and Chief Financial Officer of Unilodgers, and Defendant Verma was appointed Chief Executive Officer and Secretary. ECF No. 73-1 at 3; ECF No. 73-2 (Decl. of Shipra Jain) ¶ 4. Plaintiff and Verma were appointed as members of Unilodgers' Board of Directors ("Board"). ECF No. 80-2 (Decl. of Vaibhav Verma) ¶ 5.

On December 17, 2021, Plaintiff filed the instant action against Defendants Unilodgers and Verma. ECF No. 1. On February 16, 2023, Plaintiff filed her Second Amended Complaint ("SAC"), alleging the following causes of action: 1) Breach of Contract (against Unilodgers), 2) Tortious Interference with Contractual Relations (against Verma), 3) Breach of Fiduciary Duty (Against all Defendants), 4) Conversion (Against all Defendants), 5) Civil Conspiracy (Against all Defendants), and 6) Declaratory Relief (Against Unilodgers). ECF No. 45. The Court granted Defendants' motion to dismiss the causes of action based on tortious interference with contractual relations against Verma, conversion against Unilodgers, and civil conspiracy against both Defendants; Plaintiff's other causes of action were allowed to proceed. ECF No. 50. In her prayer for relief, Plaintiff requests judgment in her favor against Defendants on all her claims; damages with interest; and for Plaintiff's shares to be returned to her or, in lieu of receiving the shares, for damages in a sum capable of identification in an amount according to proof within the jurisdiction of this Court. ECF No. 45 at 17.

## III. LEGAL STANDARD

In a federal diversity action, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), advises that the Court should apply federal procedural law and state substantive law. *See Hanna v. Plumer*,

---

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 10, 21, 54.

2

380 U.S. 460, 471 (1965); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020). When determining the law that should apply to decide the availability of temporary injunctive relief in a diversity action, the *Erie* test can be a little tricky. On the one hand, in a diversity case, preliminary injunctive relief is not available in federal court if state law rejects the availability of that remedy. *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988) ("The general equitable powers of federal courts should not enable a party suing in diversity to obtain an injunction if state law clearly rejects the availability of that remedy."). On the other, just because state law authorizes an injunction doesn't mean a federal court sitting in diversity can issue one. *See Sonner*, 971 F.3d at 841–44. Rather, "traditional principles governing equitable remedies in federal courts . . . apply when a party requests" equitable relief under state law "in a diversity action." *Id*. at 844. Thus, a TRO may be issued in a diversity case only if applicable state law would permit it and an injunction would conform to traditional principles governing equitable remedies in federal courts.

A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Defendant Unilodgers was incorporated under the laws of Delaware with its principal place of business in California. SAC ¶ 6. The parties both apply Delaware law to Plaintiff's causes of action. ECF Nos. 47 at 3; 48 at 1. However, the application of California law regarding injunctive relief is appropriate here, where Plaintiff moves for a TRO under California Code of Civil Procedure § 526 and no party advocates for the application of Delaware law. *See Wash. Mut. Bank v. Superior Court,* 24 Cal. 4th 906, 919–20 (2001) (under California choice of law rules, foreign law proponent bears burden of establishing true conflict).

Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Stuhlbarg lnt'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Preliminary injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, is an "extraordinary and drastic remedy,"

3

1 that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689–690 (2008) (internal
2 citations omitted). In order to obtain such relief, a plaintiff must establish four factors: (1) that she
3 is likely to succeed on the merits; (2) that she is likely to suffer irreparable harm in the absence of
4 preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in
5 the public interest. *Winter v. Natural Resources Defense Council. Inc.*, 555 U.S. 7, 20 (2008).
6 The plaintiff must make a threshold showing of likelihood of success on the merits and irreparable
7 harm, but a stronger showing on one element may offset a weaker showing on another. *Alliance*
8 *for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–33 (9th Cir. 2011). In that regard, courts
9 employ a sliding scale: "serious questions going to the merits and a balance of hardships that tips
10 sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the
11 plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the
12 public interest." *Id.* at 1135 (internal quotations omitted).

13 Federal Rule of Civil Procedure 65 requires a court granting an injunction or a restraining
14 order to state why it is being issued, to state the specific terms, and to describe in reasonable detail
15 the act or acts restrained. Fed. R. Civ. P. 65(d)(1). In addition, a TRO issued without notice must
16 state the date and hour it was issued, describe the injury and state why it is irreparable, state why
17 the order was issued without notice, and be promptly filed. *Id.* (b)(2). Moreover, if the TRO is
18 issued without notice, the motion for preliminary injunction "must be set for hearing at the earliest
19 possible time, taking precedence over all other matters except hearings on older matters of the
20 same character." *Id*. (b)(3). The present TRO was issued with notice, however.

21 Under California law, an injunction may be granted "[w]hen it appears by the complaint or
22 affidavits that the commission or continuance of some act during the litigation would produce
23 waste, or great or irreparable injury, to a party to the action." Cal. Civ. Proc. Code § 526(a)(2).
24 "In the context of injunctions, insolvency or the inability to otherwise pay money damages is a
25 classic type of irreparable harm." *California Retail Portfolio Fund GMBH & Co. KG v. Hopkins*
26 *Real Est. Grp.*, 193 Cal. App. 4th 849, 857 (2011) (citing *Leach v. Day*, 27 Cal. 643, 646 (Cal.
27 1865), *Friedman v. Friedman*, 20 Cal. App. 4th 876, 890 (1993)). An injunction may also be
28 granted "[w]hen it appears, during the litigation, that a party to the action is doing, or threatens, or

is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual." Cal. Civ. Proc. Code § 526(a)(3).

## IV. DISCUSSION

### A. Plaintiff Is Likely to Succeed on the Merits

The Court finds that Jain is very likely to succeed on the merits. Jain's claims for breach of contract, breach of fiduciary duty and for declaratory relief are each based on her claim that she is a rightful minority shareholder in Unilodgers and that Defendants stole her stake in the company. ECF No. 45 at 1, 12. In response, Defendants argue that Plaintiff's July 2021 termination from the Unilodgers Board of Directors was actually effective February 2020, at which time none of her shares in Unilodgers had vested. ECF No. 80 at 12–13. And, Defendants maintain, a February 2020 redlined draft settlement agreement between Plaintiff and Unilodgers gave Plaintiff timely and adequate notice of Unilodgers' intent to repurchase Jain's then-unvested shares at the same price at which they were purchased. *Id.* at 9–10. But the parties' briefing on Plaintiff's motion for a TRO confirms that Jain was not terminated from the Board until July 2021, *see* ECF No. 80-11 (Ex. I to Verma Decl.) at 2–3 (July 29, 2021 action removing Jain from the Board by written consent); ECF No. 81, Ex. 7 (July 31, 2021 message from Defendants' counsel "to inform" Jain that she was removed from the Board); ECF Nos. 74-16 and 74-17, RFA Nos. 19–21 (Defendants' admissions that they invited Plaintiff to attend Board meetings in August 2020 and March 2021, and that Plaintiff attended a Board meeting in March 2021); and that Unilodgers failed to provide notice to repurchase Jain's unvested shares. ECF Nos. 74-16 and 74-17, RFA Nos. 10–15 (Defendants' admissions that they never provided Jain with notice of Unilodgers' intent to repurchase Plaintiff's unvested shares according to the methods set forth in the Vesting Agreement (an agreement confirming stock allocation and providing a repurchasing option for Unilodgers)), 17–18 (Defendants' admissions that neither they nor Plaintiff signed the February 2020 draft settlement agreement that Defendants claim constitutes notice of intent to repurchase Jain's shares in the company).

The parties' briefing further confirms that the Vesting Agreement between Jain and

1    Unilodgers was never modified, amended, waived, or superseded (*see* ECF Nos. 74-16 and 74-17,
2    RFA Nos. 1–5); that some of Jain's shares would have vested by July 2021 (ECF No. 74-4,
3    August 2019 Vesting Agreement ¶ 3.1); that Unilodgers was required to deliver all vested shares
4    to a stockholder upon request (ECF No. 74-4, August 2019 Vesting Agreement ¶ 3.2); that
5    Unilodgers refused to deliver any shares to Jain in response to her demands made in May and July
6    2021 (ECF Nos. 74-16 and 74-17, RFA Nos. 43–44) and had not delivered any shares to her as of
7    December 2023 (ECF Nos. 74-16 and 74-17, RFA No. 45); that Defendants refused to permit Jain
8    to inspect Unilodgers' books and records in response to her demand prior to her removal from the
9    Board (ECF No. 80-10 at 4; ECF Nos. 74-16 and 74-17, RFA No. 46); that Unilodgers' 2020 and
10   2021 statements of profit and loss listed Plaintiff as the owner of 2,253,472 shares of Unilodgers
11   stock through December 31, 2021 (ECF No. 73-11 at 6; ECF No. 73-12 at 6); that Unilodgers
12   didn't buy back any shares in 2020 or 2021 (*id.*); and that Verma, along with Lightspeed Indian
13   Partners, Lumis Partners, and Agarsha Innovations, now owns shares of Unilodgers stock that
14   were previously owned by or allocated to Jain (ECF No. 74-17, RFA Nos. 50–53). No matter how
15   high the bar for demonstrating likelihood of success on the merits may be, Jain readily clears it.

### B. Plaintiff Is Likely to Suffer Irreparable Harm

"An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) (citing *Public Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987)). Generally, economic injury is not irreparable because monetary damages are an adequate remedy. *Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Nevertheless, "intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Id.*; *see also Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841. While a "loss of control over business reputation and damage to goodwill could constitute irreparable harm," courts determining that such harm exists cannot be "grounded in platitudes rather than evidence." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). Instead, a plaintiff must "demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Winter*, 555 U.S. at 21.

1    As noted, "[i]nsolvency or the inability to otherwise pay money damages is a classic type
2    of irreparable harm" under California law. *California Retail Portfolio Fund*, 193 Cal. App. 4th at
3    857; *see also Friedman*, 20 Cal. App. 4th at 890.
4    Defendants do not dispute that the pending transaction will drain Unilodgers of all assets,
5    rendering Plaintiff unable to collect on any judgment if she prevails in the lawsuit. ECF No. 80 at
6    14–15, 18; *see also* ECF No. 74-2 ¶ 11(a); ECF No. 80-15 ¶ 7(g)(h). Nor do they dispute that the
7    proposed transaction will leave Unilodgers with its existing liabilities. *See* ECF No. 80-14, Ex. L
8    at 2 ("all liability prior to the execution of the deal . . . for all Pending litigations and past dues
9    should continue to remain previous entity and won't be picked up by the acquiring entity in any
10   form."). Although Defendants maintain that the deal is at an early stage and is unlikely to close in
11   the first half of February, the proposed terms of the transaction—an asset purchase for $9 million,
12   payable in stock, by a portfolio company of a Unilodgers investor (*see* ECF No. 80-15, Decl. of
13   Gautam Verlekar)—appear straightforward enough that the transaction could potentially close
14   before the resolution of a motion for a preliminary injunction. A TRO would "preserve[] the
15   status quo and prevent[] the irreparable loss of rights before judgment." *Walczak v. EPL Prolong,*
16   *Inc.*, 198 F.3d 725, 730 (9th Cir. 1999). Accordingly, the Court finds that Plaintiff is likely to
17   suffer irreparable harm in the absence of a TRO.

18   **C.    The Balance of Equities Tips in Plaintiff's Favor**

19   When analyzing this element, courts "must balance the competing claims of injury and
20   must consider the effect on each party of the granting or withholding of the requested relief."
21   *Winter*, 555 U.S. at 24; *see also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th
22   Cir. 1993). In assessing whether a plaintiff establishes a balance of equities that tips in their favor,
23   "the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to
24   each.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (alteration in original)
25   (citation omitted).
26   If Defendants are able to proceed with the planned transaction, Unilodgers will be rendered

insolvent and Plaintiff will get nothing in spite of the strength of her claims.[3] On the other hand, Defendants argue that a TRO would "burden[] the negotiation process and potentially caus[e] the Purchaser to abandon the transaction." ECF No. 80 at 1. However, although Defendants have characterized the impending transaction as Unilodgers' "last chance for survival," ECF No. 80 at 14, Defendants' counsel confirmed at the hearing on this motion that the company will go out of business regardless of whether the transaction is allowed to proceed. Accordingly, the Court concludes that the balance of the equities favors Plaintiff.

### D. An Injunction Is Not Against the Public Interest

The public interest factor is neutral in this case. *See Stormans*, 586 F.3d at 1138–39 ("When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction.") (cleaned up).

### E. The Requested Injunction Complies with Traditional Principles Governing Equitable Remedies in Federal Courts

In ECF No. 86, the Court requested supplemental briefing concerning whether a federal court may issue the injunctive relief Jain requests. The Court also specifically directed the parties to consider *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999), *Dateline Exports, Inc. v. Basic Const., Inc.*, 306 F.3d 912, 914 (9th Cir. 2002), and *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 729–30 (9th Cir. 1999). The Court appreciates the parties' supplemental briefs.

In *Grupo Mexicano*, the district court issued a preliminary injunction enjoining petitioners from "dissipating, disbursing, transferring, conveying, encumbering or otherwise distributing or affecting any petitioner's right to, interest in, title to or right to receive or retain, any of the Toll Road Notes." 527 U.S. at 312–13. The Supreme Court overturned the injunction, rejecting the claim that "a person's unencumbered assets can be frozen by general-creditor claimants before

---

[3] Plaintiff also raises serious questions whether the pending transaction involves self-dealing and would violate Plaintiff's rights under Delaware law. *See* ECF No. 81 at 4–5, 7; No. 80-15 ¶ 7(c), 7(f). Because the Court finds irreparable harm exists and that the requirements for an injunction under Cal. Civ. Proc. Code § 526(a)(2) are otherwise met, the Court refrains from evaluating the strength of those arguments in considering this motion.

their claims have been vindicated by judgment." *Id*. at 322–23. "Because such a remedy was historically unavailable from a court of equity, we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." *Id*. at 333; *see also Dateline Exports, Inc. v. Basic Const., Inc.*, 306 F.3d 912, 914 (9th Cir. 2002) ("Under general equitable principles recognized by the United States Supreme Court, a district court lacks authority to issue a preliminary injunction that freezes a debtor's assets in cases involving unsecured creditors.").

*Grupo Mexicano* does not bar an injunction in this case. First, Jain is seeking both equitable relief and damages. Indeed, her sixth claim for relief seeks only equitable relief. The equitable relief she seeks is the return of her shares, and the damages she seeks would include the money Unilodgers was obligated to pay her (but did not) when her shares were stolen. It is true that down the line she will have to choose between those remedies, but pleading in the alternative is fine, *see* Fed. R. Civ. Proc. 8(d)(3), and she has pled both equitable remedies and damages. The Ninth Circuit has held that "the holding of *Grupo Mexicano* is limited to cases in which only monetary damages are sought. The Supreme Court expressly stated that a preliminary injunction barring asset transfer is available where the suit seeks equitable relief." *Johnson v. Couturier*, 572 F.3d 1067, 1083–84 (9th Cir. 2009); *see also Rubin v. Pringle (In re Focus Media Inc.)*, 387 F.3d 1077, 1085 (9th Cir. 2004) ("*Grupo Mexicano* thus exempts from its proscription against preliminary injunctions freezing assets cases involving bankruptcy and fraudulent conveyances, and cases in which equitable relief is sought.").

Second, Jain does not seek (or no longer seeks) an asset freeze, and she is more properly viewed as a shareholder rather than a creditor that lacks rights in the company's assets. While the original request for a TRO (ECF No. 74) looked a little broad, Jain has now narrowed her request and seeks an order that states: "Defendants Unilodgers and Verma (and their officers, agents, servants, employees, and attorneys) are enjoined from selling Unilodgers' assets, including via the proposed sale transaction, or otherwise liquidating Unilodgers, effective immediately, until further order of the Court." The Court will narrow this a bit further to add "all or substantially all" before Unilodgers' assets, which the Court believes is the intent of the request. So revised, the request

9

does not resemble an asset freeze.

As discussed above, Jain has a strong case on the merits that she is rightfully a minority shareholder in Unilodgers and Defendants stole her shares. The most relevant Ninth Circuit precedent therefore seems to be *Walczak*. In that case, the plaintiff was a minority shareholder in defendant EPL Prolong. 198 F.3d at 728. EPL entered into a February 1998 agreement with Prolong International under which the latter would purchase substantially all of the assets of EPL Prolong, leaving EPL Prolong to be liquidated and dissolved. *Id*. Walczak moved for a TRO and preliminary injunction, seeking to prevent the consummation of the 1998 agreement. *Id*. The district court granted both, and its "motivation for granting the preliminary injunction was its concern that dissolution of EPL Prolong would preclude Walczak from collecting on a future judgment." *Id*. at 729.

In *Walczak*, the Ninth Circuit distinguished *Grupo Mexicano* on the ground that the preliminary injunction did not amount to an asset freeze. *Id*. at 730. Rather, the district court's order stated:

> Plaintiffs' request for a preliminary injunction is hereby granted. It is ordered that all defendants, their agents, assigns, officers and representatives are hereby enjoined from consummating the exchange of the planned "two for one" stock swap of EPL Prolong Inc. for Prolong International Corp. stock, and from liquidating EPL Prolong Inc. or its patent rights in any fashion until further notice from this court or until a final judgment on the merits is reached in this litigation as to all parties.

*Id*. The Court of Appeals explained that "unlike the injunction at issue in *Grupo Mexicano,* this injunction does not completely prohibit Appellants from taking any action with regard to their assets." *Id*. The court thus held that "the injunction in this case is distinguishable from the injunction in *Grupo Mexicano.* Here, the effect of the preliminary injunction was not to 'freeze' Appellants' assets. Rather, the injunction appropriately preserved the status quo and prevented the irreparable loss of rights before judgment." *Id*. at 730.

The Ninth Circuit further addressed the differences between *Grupo Mexicano* and *Walczak* in *Dateline Exports, Inc. v. Basic Const., Inc*., 306 F.3d 912 (9th Cir. 2002). The Court of Appeals explained that in *Walczak* "the request for an injunction came from a minority

10

1   shareholder trying to prevent a company from proceeding with a specific stock sale." *Id*. at 914.
2   Further, "the injunction rejected in *Grupo Mexicano* effected a freeze on all of the debtors' assets
3   while the injunction affirmed in *Walczak* did not completely prohibit Appellants from taking any
4   action with regard to their assets.  It only prohibited the Appellants from either proceeding with a
5   stock sale or otherwise liquidating the company." *Id*. (cleaned up).  In addition, *Dateline*
6   emphasized the distinction between a minority shareholder (at issue in *Walczak*) and "a creditor
7   with no right to the debtor's assets," *id*.

8       The injunction Jain seeks here is similar to the one in *Walczak*.  It prohibits an asset sale or
9   otherwise liquidating of the company.  And it is sought by a plaintiff who has shown she is
10  rightfully considered a shareholder.

11      The Ninth Circuit has also explained that "there must be a relationship between the injury
12  claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint."
13  *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015).
14  "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the
15  claims set forth in the underlying complaint itself." *Id*.  "[A] remedy is justified only insofar as it
16  advances the ultimate objective of alleviating the initial . . . violation." *Armstrong v. Newsom*, 58
17  F.4th 1283, 1292 (9th Cir. 2023) (citation omitted).

18      Here, "[t]he new allegations in the motion[] at issue here are closely related to those in the
19  operative Complaint." *Id*.  The gist of Plaintiff's SAC is that Defendants deprived her of her
20  ownership interest in Unilodgers.  The proposed transaction would strip the company of all assets,
21  leaving it worthless, so that even if Jain prevails in this lawsuit and wins back her shares, they
22  would be worthless.  While the SAC targets the stealing of her shares, and the proposed
23  transaction aims to separate those shares from any assets, those are just slightly different ways of
24  achieving the same goal of depriving Jain of her ownership interest in Unilodgers.  In this
25  situation, granting an injunction advances the ultimate objective of alleviating the initial violation.
26  *Armstrong*, 58 F.4th at 1292.  The initial violation was the stealing of her shares.  Jain sought to
27  alleviate that violation by suing to get her shares back or for monetary damages as compensation.
28  The proposed transaction would rob the shares of any value and make the company unable to pay

1  any monetary judgment.  Thus, an injunction advances the ultimate objective of alleviating the
2  initial violation by preventing the remedies Jain seeks from becoming worthless.
3       Accordingly, the Court concludes that the proposed injunction comports with traditional
4  principles of equity in federal courts.

### F. A Bond Is Not Necessary to Ensure Against Harm to Defendants

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Rule 65(c) invests the district court "with discretion as to the amount of security required, *if any.*" *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (emphasis added) (citing *Doctor's Assoc., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Given Defendants' own representations that Unilodgers will go out of business regardless of whether Defendants are able to proceed with the transaction, the issuance of an injunction will not impose any harm on Unilodgers. At most, it would affect the acquiring entity and investors or creditors that stand to benefit from the transaction, but they are not parties in this action. Nor has Defendant Verma substantiated any damages specific to him that would occur if the transaction is enjoined. Accordingly, the Court determines that no bond is necessary.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Temporary Restraining Order.  The Court hereby **ENJOINS AND RESTRAINS** Defendants Unilodgers and Verma (and their officers, agents, servants, employees, and attorneys) from selling all or substantially all of Unilodgers' assets, including via the proposed sale transaction, or otherwise liquidating Unilodgers, effective immediately. This Temporary Restraining Order shall remain in effect until for a period of 14 days, through February 21, 2024, or further order of this Court. This order shall expire at 5:00 pm on February 21, 2024 unless the Court orders an extension.

12

Defendants are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. Defendants shall file any response to this Order to Show Cause on or before noon Pacific time on February 12, 2024. Plaintiff shall file any reply on or before noon Pacific time February 14, 2024. Page limits and any affidavits or declarations shall be in compliance with Civil Local Rule 7. The Court sets a hearing on the Order to Show Cause for February 15, 2024, at 11:00 a.m. in Courtroom E, 15th floor, 450 Golden Gate Avenue, San Francisco, California 94102. Any party may file a request to appear by telephone.

**IT IS SO ORDERED.**

Dated: February 7, 2024

THOMAS S. HIXSON
United States Magistrate Judge

13