UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIPRA JAIN,<br>　　　　Plaintiff,<br>　　v.<br>UNILODGERS, INC., et al.,<br>　　　　Defendants. | Case No. 21-cv-09747-TSH<br><br>**PUBLIC VERSION OF ORDER AT ECF NO. 103**<br><br>Re: Dkt. No. 74 |

To understand this order you should first read the Court's February 7, 2024 Temporary Restraining Order and Order to Show Cause ("TRO") at ECF No. 91. The TRO set forth the relevant legal standards and governing case law. The Court does not repeat those legal citations here but assumes the reader's familiarity with them.[1]

To briefly recap, following a motion to dismiss, Plaintiff Shipra Jain's Second Amended Complaint ("SAC") alleges breach of contract against Unilodgers, Inc., breach of fiduciary duty against Unilodgers and Vaibhav Verma, conversion against Verma, and declaratory relief against Unilodgers. ECF Nos. 45, 50. Because the requested preliminary injunction would have to run against Unilodgers in order to be effective, let's remind ourselves what the claims against the company are about. The breach of contract claim alleges that Unilodgers breached the Vesting Agreement by falsely claiming that it had repurchased Plaintiff's shares in the company when in fact it did not perform the steps necessary to repurchase them, including paying for the repurchased shares. SAC ¶¶ 38, 39. The breach of fiduciary duty claim alleges that Unilodgers is liable for Verma's breach of fiduciary duty by refusing to provide Plaintiff access to the

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 10, 21, 54.

company's financial records, freezing her out of all aspects of the company's finances and operations, and improperly removing her from the company's Board of Directors. *Id*. ¶ 53. Her declaratory relief claim seeks a declaration that Plaintiff still owns her shares in Unilodgers. *Id*. ¶¶ 74-76.

On January 17, 2024, Plaintiff filed an emergency motion for a temporary restraining order to enjoin Verma and Unilodgers from proceeding with an impending sale of all of Unilodgers' assets to an India-based portfolio company of one of Unilodgers' investors. ECF No. 74. The Court granted the TRO. As to likelihood of success on the merits, the Court observed that "Jain's claims for breach of contract, breach of fiduciary duty and for declaratory relief are each based on her claim that she is a rightful minority shareholder in Unilodgers and that Defendants stole her stake in the company." TRO at 5. The Court concluded that "[n]o matter how high the bar for demonstrating likelihood of success on the merits may be, Jain readily clears it." *Id*. at 6. The Court found that Plaintiff had demonstrated irreparable harm because the proposed transaction would drain Unilodgers of all of its assets, making any judgment uncollectable. *Id*. at 7. The Court found that the balance of the hardships tilted in Plaintiff's favor because if the proposed transaction went through, Plaintiff would get nothing despite the strength of her claims, whereas Unilodgers would go out of business whether or not the proposed transaction happened. *Id*. at 7-8. The Court concluded that the public interest was a neutral factor. *Id*. at 8. Finally, the Court concluded that the TRO complied with traditional principles governing equitable remedies in federal courts. *Id*. at 8-12.

The Court initially stated that the TRO would remain in effect until 5:00 p.m. on February 21, 2024. *Id*. at 12. Pursuant to the stipulation of the parties, the Court later extended the TRO until 5:00 p.m. on March 14, 2024, while the parties explored settlement. ECF No. 96. The case did not settle, *see* ECF No. 97, the parties submitted further briefing on whether a preliminary injunction should issue, ECF Nos. 99, 100, 101, and the Court held a hearing on March 8, 2024.

**A.     Where Plaintiff's Claims Stand Now**

The major development since the TRO issued is that Unilodgers has now given Plaintiff her shares back. ECF No. 99-1 & Exs. A, B, C. Let's think about what that means for her claims

2

against Unilodgers.

### 1.     **Breach of Contract**

Plaintiff seems to have obtained all the relief her breach of contract claim would entitle her to, at least as the claim is pled. Jain alleges that Unilodgers failed to validly exercise its repurchase option under the Vesting Agreement. SAC ¶¶ 38, 39. If that claim prevails, and in the TRO the Court concluded it likely would, the implication is that she is still the owner of her shares of the company. Now that Unilodgers has returned her shares to her, it would seem she has obtained all the relief this cause of action sought.

Plaintiff contends that the return of her shares does not award her all the relief she seeks because she may also, or instead, seek damages. ECF No. 100 at 5-7. Her written briefing doesn't say much about what those damages would be. At the March 8 hearing, Plaintiff argued that the main reason for her damages is the decline in value of Unilodgers between the time her shares were stolen and when they were returned. There is some evidence that Unilodgers used to be valued highly. ECF No. 73-7 (during 2021 Unilodgers turned down an offer to sell the company for more than $100 million); ECF No. 81, Ex. 6 (Tregillis Decl.) (purporting to describe Unilodgers' current value by relying on high valuations from several years ago).

During these TRO and injunction proceedings, Plaintiff has taken conflicting stances on what Unilodgers is currently worth (a lot or a little). She initially argued that the proposed $9 million purchase price for Unilodgers' assets was unreasonably low and was evidence of the self-dealing nature of the transaction. ECF No. 73-1 at 11. Indeed, she cited her expert's report for the proposition that Unilodgers' assets are *currently* worth $109 million. ECF No. 81, Ex. 1 at 8. Now that her shares have been returned, she has changed positions, and at the March 8 hearing she was firmly of the view that the company's value has declined significantly, such that the return of her shares does not afford her all the relief she seeks in her breach of contract claim. In fairness to Plaintiff, having been excluded from the company for so long, she may simply not know what it is worth. But just as Unilodgers' late-breaking decision to return her shares looks like a strategic effort to avoid a preliminary injunction, Jain's new position that the company's value has significantly declined looks like an effort to keep her breach of contract claim alive on a new

3

theory that is the opposite of what she argued in seeking a TRO.

The decline in the value of the company might entitle Jain to a damages remedy on her breach of contract claim. The Court will also assume, as Jain argues (ECF No. 100 at 7), that an award of damages in this situation could be considered part of the equitable remedy of specific performance. *See Century Inv. Corp. v. United States*, 250 F.2d 139, 143 (9th Cir. 1957) ("A monetary award may be made in an action brought for specific performance . . . to provide necessary supplemental relief in addition to a decree of specific performance.") (citations omitted). Jain does not cite any case law concerning whether an award of damages incidental to an award of specific performance retains its equitable nature when the request for specific performance has become moot, as is likely the case here given the return of her shares. Assuming so, "and despite the broad discretionary powers lodged in a court of equity, the measure of the award must still accord with some recognized standard." *Id*. During the March 8 hearing, Jain presented argument as if the decline in value of Unilodgers, and thus of her shares, between the time her shares were stolen and then returned somehow naturally gives rise to a claim of damages. But that's not how investments work. If Jain's shares had never been taken from her and she had held on to them the entire time, the decline in value would be her problem, just like any other investor whose investment performed poorly.

Jain may have a damages remedy if she can show she would have sold her shares before the company declined in value had Unilodgers not stolen them from her. The Court does not see any suggestion in the SAC that Jain wanted to divest herself of her shares but was prevented from doing so by Defendants' misconduct. Nor does the Court see any evidence before it that Plaintiff would in fact have sold her shares had they been in her possession. Indeed, as late as her January 24, 2024 filing, Jain was arguing that Unilodgers was worth more than $100 million, ECF No. 81, Ex. 1 at 8 & n.11, which doesn't sound like an investment she wished she had been able to dump. Thus, right out of the gate one wonders if this damages claim exists at all.

If this damages claim does exist, its value is hard to figure out. Plaintiff's expert opines that Unilodgers was worth at least $109 million in 2019. ECF No. 81, Tregillis Decl. ¶ 34. Jain's 37.22% stake in the company as of June 2020 (*id*. ¶ 36) could imply that her stake in the company

4

was worth more than $40 million, at least on paper. But there are reasons to doubt the company was ever really worth that. *E.g.*, ECF No. 100, Ex. 4 (March 2020 letter by investor Lightspeed accusing Verma of "knowingly and intentionally" misrepresenting Unilodgers' bookings conversion rates "which have striking implications for the financial viability" of the business); ECF No. 80-2 (Verma Decl. ¶ 36) ("prior statements of Unilodgers valuation made by me in various documents as presented in the Motion were from several years ago and were clearly instances of 'puffing' in the context of promoting prior attempted (but unsuccessful) investment efforts"). And there is also the problem that Jain's shares vested over time. ECF No. 73-2 (Jain Decl. ¶ 6). Basically, they vested over the span of four years between August 2019 and August 2023, with a quarter of them vesting in August 2020, and the remainder vesting in equal amounts each of the following months. *Id.* During this same period of time, the company's value seems to have cratered. ECF No. 80-2 (Verma Decl. ¶¶ 29, 30 (company is near bankruptcy)); ECF No. 80-14 (October 2023 purchase proposal of $8-9 million "equivalent to 16-18 times your current revenue"); ECF No. 81 at UNI00195889, page 102 of 379 (huge drop in revenue between 2019 and 2022, consistent with the claim that $8-9 million is equivalent to 16-18 times the company's value).

And we can't forget the fact that Unilodgers isn't publicly traded. For a publicly traded company, a plaintiff who had vested shares and could show that he wanted to sell on a particular date but was unlawfully prevented from doing so could likely point to the change in share price as evidence of his damages. The existence of people who would have bought the shares could probably just be assumed from the fact that they were publicly traded. But Unilodgers was not publicly traded, so we can't measure the loss in value in Jain's shares by comparing the share price on different days. And can we even assume the existence of a purchaser? Given the schedule under which Jain's shares vested, that would be quite a bespoke transaction, and such a strange way of investing in Unilodgers.

The Court realizes that this is just a preliminary injunction motion – not the trial in this action. Jain has advanced the general argument that the return of her shares does not moot her breach of contract claim because of the decline in value of the company, and she has not said

anything more than that.  She has not yet fleshed out a theory of damages, which would be subject to proof; nor has she put forth an expert report substantiating her damages claim.  Perhaps down the road she will do these things, and perhaps she will succeed.

But right now, Jain is asking for a preliminary injunction to restrain an asset sale.  In order to obtain that relief, she has to show she is likely to succeed on the merits.  Her TRO application prevailed because she made a strong showing that Unilodgers stole her shares.  But now that the company has given them back, to stay afloat her breach of contract claim needs some damages attached to it.  And to say that the showing of damages is not strong is to overpraise it.  The showing is nonexistent.  It is not true that the decline in value of her shares somehow automatically leads to an easily understood damages theory – or to any damages theory.  As noted, the Court sees no suggestion that Jain ever wanted to divest her interest in Unilodgers.  Her new and thinly described damages claim does not meet any burden of proof.

### 2. Declaratory Relief

Jain's claim for declaratory relief seems to have become moot.  She seeks a declaration that Unilodgers did not validly exercise the option to repurchase her shares and that its opportunity to do so has been extinguished.  SAC ¶ 75.  There no longer seems to be a need to determine those things because Unilodgers has "rescinded, withdrawn and nullified" the purported repurchase and returned her shares to her.  ECF No. 99-1, Ex. A.

### 3. Breach of Fiduciary Duty

Jain's breach of fiduciary duty claim has lost most of its oxygen but is not completely moot.  She has a remaining claim for damages against Unilodgers for aiding and abetting Verma's breach of fiduciary duty by freezing her out of the company's finances and operations, and so on.  It is important to understand that when the Court issued the TRO, it found that Jain was likely to prevail on her core theory that Unilodgers stole her shares, but the Court made no findings that she was likely to prevail on the other aspects of her breach of fiduciary duty claim.  Nor has Plaintiff made any attempt in any of the briefing before the Court to show that she is likely to prevail on the aspects of her breach of fiduciary duty claim that are distinct from the stealing of her shares.  Further, the damages that attend the remainder of her breach of fiduciary duty claim are hard to

understand. Viewing the breach of fiduciary duty claim as a whole, the most logical measure of her damages was the value of her stake in the company. But now that her shares have been returned, she can't recover her stake in the company a second time. So, her breach of fiduciary duty damages would reflect the damages she sustained from being excluded from meetings, denied material information, and being defamed both within and outside the company. SAC ¶ 52. There is nothing before the Court to indicate what those damages are or whether they are substantial. Perhaps her breach of fiduciary duty damages also include her breach of contract damages from the decline in value of her shares.

### 4. Conclusion

In sum, Plaintiff has not shown that she is likely entitled to any further equitable relief or that she is likely to prevail on anything further. She has a potential damages claim on her breach of contract claim (which may be of an equitable nature if it is thought of as part of the remedy of specific performance) that has not been explained and certainly not proven. She also has a potential damages claim on the remainder of her breach of fiduciary duty claim, but she hasn't tried to prove that she is likely to prevail on the remainder of that claim or if the associated damages are worth anything.

## B. Whether a Preliminary Injunction Should Issue

The factors the Court considered in granting the TRO now seem to come down differently. Previously, the Court concluded that Jain was very likely to prevail on her claims that Unilodgers stole her shares. But Jain has now succeeded on those claims, and her shares have been returned to her. Any likely further success on the merits has not been shown. As discussed above, Jain may have a damages claim associated with her breach of contract claim, but she has not fleshed out what it is concretely enough for the Court to see that the claim is good or provable. As for the breach of fiduciary duty claim, she has not shown that she is likely to prevail on those aspects of her claim that do not relate to the stealing of her shares, let alone that there are meaningful damages associated with those aspects of her claim.

There is some irreparable harm she might suffer if she prevails on her damages claim for breach of contract and the remaining aspects of her breach of fiduciary duty claim against

Unilodgers because that judgment will be uncollectable. Because of the uncertainty in Jain's remaining damages claims, though, the balance of the equities doesn't favor either side at this point. The Court was willing to issue a TRO to block an asset sale that would have left Unilodgers judgment proof when it was convinced the Plaintiff had strong claims the company had stolen her shares. But the equities do not favor bringing a business transaction to a halt over a breach of contract damages theory that hasn't been meaningfully explained, much less proven, and aspects of a breach of fiduciary duty claim that also haven't been proven. And the public interest is still not affected by this dispute.

As the TRO noted, Jain has an argument that the proposed asset sale involves self-dealing and would violate her rights under Delaware law. TRO at 8 n.3. She is free to sue under Delaware law to try to stop it. Jain's assertion that the proposed asset sale is illegal under Delaware law has nothing to do with her pending claims in this case and therefore will not support a preliminary injunction. *See Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) ("Though new assertions of misconduct might support additional claims against a defendant, they do not support preliminary injunctions entirely unrelated to the conduct asserted in the underlying complaint.").

Accordingly, Plaintiff's motion for a preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 14, 2024

THOMAS S. HIXSON
United States Magistrate Judge